UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ST. PAUL FIRE & MARINE                          CIVIL ACTION
INSURANCE COMPANY


VERSUS                                          NO. 06-2597


HUYNH PHAM and                                  SECTION "F"
BUSINESS LOAN CENTER, LLC


ORDER AND REASONS

Before the Court is the plaintiff's motion for summary judgment.  For the reasons that follow, the motion is DENIED.


Background

In May 2005, the fishing boat F/V DREAM COME TRUE was shrimping in the Gulf of Mexico when its right propeller struck a submerged object.  Within a half-hour, the engine room took on water and the boat began to sink.  Although the boat was taking on more water than the pumps could remove, the crew managed to steer the boat to a nearby platform on one engine.  Upon tying the boat to the platform, the water was up to the boat's wheelhouse.  The deckhouse was underwater at least six inches.  The nose of the boat and the engines were completely submerged.  The boat continued to take on water and sink until two other boats and their crews were able to pump enough water to allow the boat to be towed ashore.

1

The boat was insured by a hull policy issued by St. Paul Fire & Marine Insurance Company. St. Paul paid a portion of the damages to Huynh Pham, but denied coverage for the engines and machinery. St. Paul sued Pham and Business Loan Center, LLC, asking the Court to enter a declaratory judgment stating that it has no liability under the policy for claims related to the damage of machinery in the accident. St. Paul now moves for summary judgment, arguing that the language of the policy precludes coverage for the damage to the F/V DREAM COME TRUE's engines and machinery. Business Loan Center opposes the motion, arguing that the policy language is clear and unambiguous and should be construed against St. Paul.

I.

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a

2

factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, she must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II.

The Court's first task is to determine which law governs the interpretation of the policy language. The plaintiff brought the case before this Court, invoking its original maritime jurisdiction. Because the St. Paul hull policy insures against certain maritime risks, injuries, and losses, it qualifies as a

3

maritime insurance policy within the meaning of <u>Wilburn Boat Co. v.</u> <u>Fireman's Fund Insurance Co.</u>, 348 U.S. 310 (1955), where the Supreme Court followed the example of Congress and left the regulation of marine insurance with the States. Since then, "the interpretation of a contract of marine insurance is--in the absence of a specific and controlling federal rule--to be determined by reference to appropriate state law." <u>Ingersoll-Rand Fin. Corp. v.</u> <u>Employers Ins. of Wausau</u>, 771 F.2d 910, 912 (5th Cir. 1985). Therefore, a choice-of-law analysis is required to determine the appropriate state law governing this policy, and this is achieved by use of an interest analysis. <u>See</u> <u>Transco Exploration Co. v.</u> <u>Pacific Employers Ins. Co.</u>, 869 F.2d 862, 863 (5th Cir. 1989); <u>Ingersoll-Rand Fin. Corp.</u>, 771 F.2d at 912.

The Court holds that Louisiana has the greatest interest in the litigation. St. Paul is incorporated and has its principal place of business in New York and the owner of the F/V DREAM COME TRUE is a resident of Texas, but the insurance contract was issued in Louisiana, the accident took place off the coast of Louisiana, and the additional insured, Business Loan Center, has its principal place of business in Louisiana. In light of these facts, the Court concludes that Louisiana has a legitimate interest in regulating contracts issued within its borders insuring activities that take place off its coastline. Therefore, the Court applies Louisiana's rules of interpretation for insurance contracts to resolve this

4

matter.

### III.

Under Louisiana law, an insurance policy is a contract that should be enforced as written. See Peterson v. Schimek, 729 So.2d 1024, 1028 (La. 1999). When the words are clear and unambiguous, and lead to no absurd consequences, courts will enforce the policy language as written. LA. CIV. CODE art. 2046; see also Central La. Elec. Co. v. Westinghouse Elec. Corp., 579 So. 2d 981, 985 (La. 1991). Insurance policies are construed as a whole and each provision must be interpreted in light of the other provisions so that each has meaning. LA. CIV. CODE art. 2050; see also Central La. Elec. Co., 579 So. 2d at 985. Further, "[p]olicies should be construed to effect, not deny, coverage. [Citations omitted]. And an exclusion of coverage should be narrowly construed." Breland v. Shilling, 550 So. 2d 609, 610 (La. 1989)(Calogero, J.). "Unless ambiguous, words used in an insurance contract will be given their commonly prevailing meaning." Id. at 610-11 (citing LA. CIV. CODE art. 2047). If the language of an insurance policy is clear and explicit, no further interpretation may be made. LA. CIV. CODE art. 2046.

When policy language is not clear, but, rather, ambiguous, courts are allowed to consider extrinsic evidence to interpret policies and resolve contract disputes. "Ambiguous policy

provisions are to be construed against the confector, the insurer. [Citations omitted.]   Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." Breland, 550 So. 2d at 610-11 (citing LA. CIV. CODE art. 2045).


                                IV.

     The St. Paul policy at issue contains the following exclusion:

     Named Perils Machinery Clause:   Warranted that this
     policy shall not cover any claims for loss damage or
     expense with respect to the motors (outboard or
     otherwise), engines, gears or clutches of the vessel(s)
     named herein unless directly caused by the following:

     (1) Fire and/or lightning
     (2) Explosion from without said machinery
     (3) Collision with another floating vessel
     (4) Sinking of the vessel caused by striking of a
     submerged object while operating in navigable waters.

The policy does not define the term "sinking."   The task for the Court in resolving this contract dispute is to define the term.

     St. Paul argues that the term "sinking" means that the vessel must hit the sea bottom or sink as far as possible in the water in order to effect coverage for damaged engines and machinery.   St. Paul relies heavily on two non-binding cases to make this argument: Larsen v. Insurance Co. of North America, 252 F. Supp. 458 (W.D. Wa. 1965) and DeRose v. Albany Insurance Co., 792 F. Supp. 973 (D.N.J. 1992).   In Larsen, a ship, apparently cursed with the luck

                                6

of Santiago from <u>The Old Man and the Sea</u>, transported cured salmon from Alaska.  After experiencing one pitfall and difficulty after another,[1] the ship arrived at its destination in Seattle, only to discover that its cargo was spoiled.

The plaintiffs ultimately attempted to recoup their losses from their insurer.  The ship's insurance policy contained a provision excluding coverage for partial losses unless they were "directly caused by the vessel being stranded, <u>sunk</u>, burnt or in collision with another ship or vessel or with ice or with any substance other than Water."   <u>Larsen</u>, 252 F. Supp. at 469 n.10 (emphasis added).  Therefore, to recover, the plaintiffs argued that their losses were directly caused by the vessel being stranded, sunk, or burnt.  While the ship had endured a fire on board and had been stranded on a sand bar, the court did not find these events to directly cause the spoilage.  This left the court to determine whether the ship had been "sunk" for purposes of activating coverage under the policy when the ship's sea suction pipe fell from the ship, letting approximately thirty inches of water enter the bilge and the holding cell where the salmon was

---

[1]   The ship experienced an inordinate number of hardships on its short voyage, including engine and propeller damage from striking a log in the water, a fire in the engine room, becoming stranded on a sand bar, further engine problems that resulted in the loss of at least one engine, the loss of a sea suction pipe that resulted in sea water entering the bilge, and finally the loss of the main engine that completely disabled the ship and caused it to finish its journey in tow.

located.  The court held:

> [T]o be "sunk" or to come within the term "sunk" the
> vessel...must be sunk as far as it could sink under the
> surface of the water, and not just lying a little lower
> in the water than normal either from shipping water
> through leaks or otherwise, or from a heavier load or
> ballast.  Common sense requires something more than a
> mere shipping of 30 inches of water in the hold causing
> a ship to lay a little lower in the water than it
> otherwise would, but without touching the bottom, to
> constitute sinking, else the possibility of collecting
> insurance under this type of clause would be even greater
> than the perils ordinarily insured without the [exclusion
> for partial losses] limitation.  Obviously, there was no
> "sinking" in this case.

Id. at 472.

The facts in DeRose v. Albany Insurance Co., 792 F. Supp. 973

(D.N.J. 1992), are very similar to the facts in the case before the

Court now.   While fishing offshore, a boat struck a submerged

object and took on enough water to cover half of the engine block.

Because the leak was confined to the front of the boat, the crew

was able to bring the boat to a position near the shore, where the

United States Coast Guard pumped water from the vessel and arranged

for a tow.   The owners of the boat filed a claim for damaged

machinery under their insurance policy, but the insurer denied the

claim, invoking the following exclusion:

> Warranted not liable for loss or damage to machinery and
> appurtenances unless directly caused by stranding,
> sinking, fire or collision with another vessel, except to
> the propeller and propeller shaft.

Id. at 974 (emphasis added).   The plaintiffs argued "that the

phrase 'directly caused by ... sinking' should be read to mean

8

caused by the process of sinking, even if incomplete and abated." Id. at 976. Relying heavily on the reasoning in Larsen, the court equated the term "sinking" with the word "sunk" and found that partial submersion of the boat did not activate coverage under the policy. "For plaintiff to prevail, one must read the policy to cover flooding or taking on water where there was a substantial likelihood that the vessel would sink unless actions were taken by the crew or others or the water abated. The policy cannot conceivably be so read." Id.

Here, in interpreting the policy at issue by defining the term "sinking," this Court finds no ambiguity in the language of the policy. A quick perusal of a dictionary reveals that "sinking" is the present participle of "sink," which means "to become submerged" or "to become partly buried or submerged." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 2125 (1986). The use of a present participle expresses a state of action in progress. Id. at 1794; see also McCloskey v. U.S. Postal Service, 534 F. Supp. 667 (E.D. Pa. 1982).

The Court finds the cases cited by the defendant, Larsen and DeRose, to be inapposite and unpersuasive, respectively. The policy language in Larsen was significantly different than the policy language in this case. In Larsen, the insurer employed the term "sunk" in the policy, not the present participle "sinking." The court correctly inferred that term "sunk" as used in that

9

policy meant that a boat must be "sunk as far as it could sink under the water." Using a past tense implies that no further action is taking place. Arguably, in <u>Larson</u>, the ship wasn't sinking at all, as it only took on thirty inches of water, which was soon pumped out. No submerging of the boat took place. The facts in <u>Larsen</u> are quite different from the facts here, where the F/V DREAM COME TRUE became incapacitated quickly after hitting an object in the water, taking on water, and submerging to the point of necessitating emergency services.

Although the facts and policy language in <u>DeRose</u> are almost identical to the facts in the instant case, the Court finds the reasoning in that case to be unpersuasive. Strangely, the court claimed to utilize a "common sense" approach to contract interpretation, but it ignored the active tense of the policy language and also the practical application of its interpretation. As noted, the use of the present participle "sinking" refers to action currently in progress, and, notably, does not require the ship to be "sunk" entirely. Therefore, the plain language of the policy contemplates coverage for a ship that has been damaged due to submersion, or partial submersion. The parties agree that the F/V DREAM COME TRUE was in a state of submersion and suffered significant damage to its machinery and engines (which had been completely submerged under water). Further, recognizing coverage for damage to machinery only for completely submerged ships would

10

lead to an absurd result because crews would be required to let their boats sink to the bottom of the riverbed or sea in order to be covered under their insurance policy.    Not only does this interpretation provide extreme disincentives to mitigate loss, it puts crews at further risk for personal harm as they may also "go down with the ship."

This Court is required to adhere to the contract interpretation laws of Louisiana, which encourage findings of coverage and disfavor narrow readings of exclusions.    Applying these rules in conjunction with a plain reading of the policy language, the Court finds that the policy clearly provides coverage for damage to machinery and engines as a result of sinking, whether or not emergency services intervene to prevent the boat from sinking to the bottom of the river or sea.    Because no ambiguities exist in the policy, no further analysis or consideration of extrinsic evidence is necessary.

Accordingly, St. Paul's motion for summary judgment is DENIED.

New Orleans, Louisiana, May 17, 2007.

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE